NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BRANDON KENNETH ZAMORA, *Appellant*.

No. 1 CA-CR 25-0138

FILED 08-13-2026

Appeal from the Superior Court in Maricopa County
No. CR2024-006111-001
The Honorable Monica Edelstein, Judge

**AFFIRMED**

COUNSEL

Feldman Royle Ahl, PLLC, Phoenix
By David E. Ahl
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joseph A. Newburg, II
*Counsel for Appellee*

_____

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Anni Hill Foster, and Vice Chief Judge David D. Weinzweig joined.

_____

**W I L L I A M S**, Judge:

**¶1**   Brandon Kenneth Zamora appeals his convictions and sentences. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶2**   The State charged Zamora with eight counts of sexual conduct with a minor (Counts 1–7 and 11), two counts of furnishing obscene or harmful items to minors (Counts 8 and 12), one count of molestation of a child (Count 9), and one count of attempt to commit sexual conduct with a minor (Count 10), alleging he sexually abused his niece ("Simone") and nephew ("Conrad") (collectively, "the victims") on multiple occasions.[1] The State also alleged numerous aggravating circumstances.

**¶3**   Nearly three months before trial, the State moved to dismiss Count 2, renumber the indictment, and amend it. Specifically, and as relevant to this appeal, the State moved to amend Count 7 by changing the "to wit" language describing the location of the offense.[2] In making this request, the prosecutor avowed that he had provided defense counsel with the proposed amendment and counsel had "indicated" he had "no objection to the motion."

**¶4**   Because the superior court took no action on the motion, the State moved to amend the indictment a second time approximately three weeks before the trial start date. As part of that motion, the prosecutor again represented that he had contacted defense counsel about the proposed

_____

[1]  We use pseudonyms to protect the identity of victims and witnesses. *See* Ariz. R. Sup. Ct. 111(i).

[2]  For clarity, we refer to all counts as numbered in the original indictment.

amendment and defense counsel had "indicated" he had "no objection to the motion."

**¶5** At a trial procedure conference held the next day, defense counsel waived Zamora's presence, and the superior court addressed the State's outstanding motions. After confirming that counsel did not object, the court dismissed Count 2 and granted the unopposed motion to amend the indictment.

**¶6** The matter then proceeded to trial. After presenting the State's case-in-chief, the prosecutor moved for a directed verdict in Zamora's favor on Counts 6 and 11, which the superior court granted. A jury then convicted Zamora of the remaining charges, finding that Simone was under 12 years of age and Conrad was under 15 years of age when the offenses occurred.

**¶7** After denying Zamora's motion for new trial, the superior court sentenced him to life with the possibility of release after 35 years on Count 3 and consecutive and concurrent presumptive terms of imprisonment on the other counts, totaling an additional 107 years. Zamora timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I. Amendment of the Indictment

**¶8** Zamora argues that the superior court improperly granted the State's motion to amend Count 7. He contends the amendment violated Arizona Rule of Criminal Procedure ("Rule") 13.5(b) and deprived him of "his constitutional right to a probable cause determination and to notice of the charges against him."

**¶9** Because Zamora failed to challenge the amendment in the superior court, he has forfeited review for all but fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018*); see also State v. Freeney*, 223 Ariz. 110, 114, ¶ 26 (2009) (holding "a violation of Rule 13.5(b) is neither prejudicial per se nor structural error"). To establish fundamental error, a defendant must show error that: (1) went to the foundation of his case, (2) denied him a right essential to his defense, or (3) was so egregious as to deny him the possibility of a fair trial. *Escalante*, 245 Ariz. at 142, ¶ 21. Under the first two prongs, a defendant must also show prejudice. *Id.* If a

defendant "establishes the third prong, he has shown both fundamental error and prejudice, and a new trial must be granted." *Id.*

¶10      Both the United States Constitution and the Arizona Constitution guarantee criminal defendants the right to know the nature and cause of the accusations against them. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . ."); *see also* Ariz. Const. art. 2, § 24 ("In criminal prosecutions, the accused shall have the right . . . to demand the nature and cause of the accusation against him. . . ."). Consistent with this constitutional mandate, an indictment provides "a plain, concise statement of the facts sufficiently definite to inform the defendant of a charged offense." Ariz. R. Crim. P. 13.1(a).

¶11      Apart from satisfying the notice requirement, an indictment: (1) "ensure[s] that a neutral intermediary—a grand jury comprised of ordinary citizens—finds that probable cause exists *before* the State can bring charges," *McKaney v. Foreman ex rel. Cnty. of Maricopa*, 209 Ariz. 268, 274–75, ¶ 31 (2004) (Hurwitz, J., dissenting in part and concurring in part) (citing Ariz. Const. art. 2, § 30 ("No person shall be prosecuted criminally . . . otherwise than by information or indictment. . . .")); and (2) establishes trial boundaries—limiting the scope "to the specific charge or charges" alleged, Ariz. R. Crim P. 13.5(b). "*Unless the defendant consents*, a charge may be amended only to correct mistakes of fact or remedy formal or technical defects." *Id.* (emphasis added). Under this "prophylactic rule of criminal procedure," *Freeney*, 223 Ariz. at 114, ¶ 25, an amendment that changes the nature of an offense—by either changing the factual allegations or the legal description of the elements—is impermissible absent the defendant's consent, *State v. Montes Flores*, 245 Ariz. 303, 307, ¶ 16 (App. 2018).

¶12      Here, the amendment to Count 7 did not change the legal description of the elements of the offense. Both in the original and the amended indictment, the State alleged that "Zamora, on or between August 20, 2009, and August 24, 2011, intentionally or knowingly did engage in sexual intercourse or oral sexual contact with [Simone], who was a minor under the age of fifteen years" in violation of A.R.S. § 13-1405.

¶13      But the State charged Zamora with numerous counts of sexual conduct with a minor and differentiated between these counts by including "to wit" language describing the nature and location of each offense. Specific to Count 7, the State moved to change the original "to wit" language from "oral/penile – another time in the garage when victim was with a cousin" to "time when victim was in the bathtub."

¶14	While an amendment to the location of an offense *may* correct a mere mistake of fact without violating Rule 13.5(b), *see State v. Buccheri-Bianca*, 233 Ariz. 324, 330, ¶ 19 (App. 2013) (concluding an amendment that changed "the location where the conduct was alleged to have occurred did not change the elements necessary to prove the crime and therefore did not change the nature of the offense"), in this case, the record makes clear that the "bathtub" incident charged under the amendment was wholly distinct from the "oral/penile" contact alleged in Count 7 of the original indictment. When the prosecutor asked Simone to recount the bathtub incident at trial, she testified that Zamora entered the bathroom while she was bathing, undressed, slipped into the bathtub with her, and touched her genitals both manually and with his genitals. No reasonable interpretation of this testimony is consistent with the oral/penile sexual contact alleged in the original indictment. Thus, the amendment alleged a separate offense.

¶15	Without denying a material change to the nature of the alleged offense, the State asserts the amendment to Count 7 did not run afoul of Rule 13.5(b) because the State requested the amendment before trial and Zamora did not object. *See State v. Schwartz*, 188 Ariz. 313, 319 (App. 1996) ("Although a person cannot be convicted of an offense not charged against him through indictment or information, the trial court can amend an indictment upon an oral motion by the state if the defendant does not object."). For his part, Zamora argues that Rule 13.5(b) "requires a defendant's express consent," and that neither his attorney's failure to object nor his "silence" concerning "a fundamental, due process right" reasonably can be construed as the requisite consent. *See State v. Sanders*, 115 Ariz. 289, 293 (App. 1977) (noting that an amendment to an indictment raises fundamental due process concerns and concluding "[i]t is therefore not too much to ask that the defendant be apprised of what is occurring and that his consent be secured").

¶16	Because the amendment did not correct a mistake of fact but instead materially changed the factual allegations of Count 7, under Rule 13.5(b)'s plain language, Zamora's consent was required. *See State v. Johnson*, 198 Ariz. 245, 247–48, ¶¶ 3, 9–11 (App. 2000) (concluding an amendment changing the factual basis for sexual conduct with a minor from digital penetration to penile penetration changed the nature of the offense). In the absence of such consent, the amendment violated Rule 13.5(b).

¶17	"But not every violation of Rule 13.5(b) infringes a defendant's [constitutional] right to notice." *Montes Flores*, 245 Ariz. at 307, ¶ 17. "Even when the nature of the offense is changed, if the defendant

receives constitutionally adequate notice of the modification, he is not prejudiced" and his constitutional rights are not violated. *Id.* (citation modified).

¶18 To determine whether a defendant received constitutionally sufficient notice, we examine whether he "had actual notice of the charge, from either the indictment or other sources." *Freeney*, 223 Ariz. at 115, ¶ 29; *see also State v. Copeland*, 253 Ariz. 104, 109–10, ¶ 8 (App. 2022) ("In determining sufficiency, the indictment must be read in the light of the facts known by both parties." (citation modified)). In cases "involving a young victim and an alleged resident child molester,"[3] an indictment provides the defendant "with adequate notice of the charges against him" if it tracks the relevant statutory language, identifies the victims, specifies the location in which the offenses occurred, and provides "a time frame for the offenses." *Id.* at 108, 111, ¶¶ 1, 13 (citation modified).

¶19 Here, three months before trial, Zamora had actual notice that the State alleged he engaged in sexual intercourse or oral sexual contact with Simone in a bathtub between August 20, 2009 and August 24, 2011. In other words, the amendment set forth the statutory elements of the offense and identified the victim, location, and relevant timeframe; providing legally-sufficient notice. Contrary to Zamora's vagueness argument, "the State was not required to provide notice of the specific acts giving rise to the charges or the manner in which the offenses would be proven." *Id.* at 111, ¶ 13 (citation modified).

¶20 Despite the uncontroverted evidence of actual notice, Zamora contends that the amendment deprived him of a right essential to his defense. Had he received "proper notice," Zamora argues his attorney would have questioned Simone's mother about her knowledge of the bathtub incident during "a pretrial interview to develop inconsistencies in [Simone's] testimony."

¶21 At trial, Simone testified to the details of the bathtub incident. She stated that after the assault, Zamora stepped out of the bathtub, dressed, and exited the bathroom. Simone said she immediately began experiencing a "burning" sensation, got out of the tub, urinated, and then complained to her mother that her genitals burned without disclosing any

---

[3] "Resident child molesters have been defined as defendants who have regular access to and control over children whom they sexually abuse in secrecy for long periods of time." *Copeland*, 253 Ariz. at 108, ¶ 1 n.1 (citation modified).

details of the assault because she did not want Zamora "to get in trouble.". When Simone's mother responded that bath soap likely caused the irritation.

**¶22** Although Zamora speculates that his attorney could have elicited testimony from Simone's mother that contradicted or otherwise undermined Simone's account, such speculation fails to establish prejudice under fundamental error review. *See State v. Munninger*, 213 Ariz. 393, 397, ¶ 14 (App. 2006). Notably, Zamora sought neither a recess nor a continuance in response to Simone's trial testimony. *See Freeney*, 223 Ariz. at 115, ¶ 28. Moreover, had Simone's mother testified that she did not recall Simone complaining of a burning sensation following a bath taken at least thirteen years before trial—as Zamora speculates—the evidentiary value of such testimony would have been negligible.

**¶23** Other than speculating about Simone's mother's potential testimony, Zamora fails to identify any prejudice the amendment caused "his litigation strategy, trial preparation, examination of witnesses," or global defense that the victims' simply lied. *See id.* At trial, defense counsel challenged Simone's credibility, argued she had motive to fabricate the allegations, and highlighted discrepancies between her testimony and that of other witnesses. Simply put, Zamora has not shown that the amendment hampered his defense.

**¶24** Apart from his unsubstantiated claim that the amendment impaired his trial defense, Zamora contends the amendment infringed on his constitutional right to double jeopardy protection from a subsequent prosecution on the original Count 7 charge. For purposes of this appeal, however, we need not resolve a hypothetical future prosecution.

**¶25** Finally, Zamora argues the amendment deprived him of his substantive right to be tried only on charges presented in an indictment returned by a grand jury. "The issue of probable cause is a closed question after the jury determines a defendant's guilt beyond a reasonable doubt." *State v. Charo*, 156 Ariz. 561, 566 (1988) (citation modified); *Freeney*, 223 Ariz. at 115, ¶ 30 n.4 ("Any failure to have submitted an element to the grand jury for a finding of probable cause is perforce harmless error because the jury found [the defendant] guilty beyond a reasonable doubt." (citation modified)). Indeed, "Arizona case law is clear that, with one exception, all challenges to a grand jury's findings of probable cause must be made by motion followed by special action before trial; they are not reviewable on appeal." *State v. Moody*, 208 Ariz. 424, 439–40, ¶ 31 (2004). "That one exception to the rule occurs when a defendant has had to stand trial on an

indictment which the government knew was based partially on perjured, material testimony." *Id.* (citation modified). Because the exception does not apply to this case, we do not consider Zamora's probable cause claim further.

**¶26** In sum, the superior court erred in granting the State's motion to amend the indictment under Rule 13.5(b) because the amendment changed the nature of the offense alleged in Count 7. However, because Zamora had actual notice of the charges against him before trial and ample opportunity to prepare a defense, he suffered no prejudice from the Rule 13.5(b) violation and no infringement of his constitutional rights.

## II. Admission of Witness Testimony

**¶27** Zamora argues that the superior court improperly permitted the victims' cousin ("Ariana," a pseudonym) to testify at trial. According to Zamora, Ariana's refusal to appear at a court-ordered deposition or otherwise submit to a pretrial interview compelled the preclusion of her testimony.

**¶28** We review a superior court's decision to allow a witness to testify for an abuse of discretion. *State v. Carlos*, 199 Ariz. 273, 277, ¶ 10 (App. 2001). "An error of law in reaching a discretionary conclusion may constitute an abuse of discretion." *State v. Thompson*, 252 Ariz. 279, 290, ¶ 26 (2022).

**¶29** To address Zamora's claim, we first review the relevant rules of criminal procedure. In any felony case, the State must disclose to the defendant, among other things, "the name and address of each person the State intends to call as a witness in the State's case-in-chief and any relevant written or recorded statement of the witness." Ariz. R. Crim. P. 15.1(a), (b)(1). Both the prosecutor and the defense attorney may request that the superior court order the deposition of a recalcitrant witness upon a showing "that the person's testimony is material to the case or necessary to adequately prepare a defense or investigate the offense . . . and that the person will not cooperate in granting a personal interview." Ariz. R. Crim. P. 15.3(a)(2). Either party may also "move to compel disclosure or request an appropriate sanction for a disclosure violation of Rule 15." Ariz. R. Crim. P. 15.7(a). "If the court finds that a party violated a disclosure obligation under Rule 15, it must order disclosure as necessary and impose an appropriate sanction, unless the court finds that: . . . the party could not have disclosed the information earlier with due diligence and the party disclosed the information immediately upon its discovery." Ariz. R. Crim.

P. 15.7(b). If the court determines— upon considering: (1) "the significance of the information not timely disclosed," (2) "the violation's impact on the overall administration of the case," (3) "the sanction's impact on the party and the victim," and (4) "the stage of the proceedings when the party ultimately made the disclosure"—that sanctions are warranted, it may, among other things, preclude a witness's testimony, grant a continuance, or hold the witness in contempt. Ariz. R. Crim. P. 15.7(c).

¶30 In this case, the State noticed Ariana as a prospective witness in its initial disclosure statement. Six months later, the prosecutor asked the superior court to order Ariana to submit to a deposition, describing her as an "uncooperative," material eyewitness "to several of the charged offenses" and chronicling her refusal to communicate with the State and efforts to evade service of a subpoena for trial. The court granted the motion and so ordered.

¶31 Although the State served Ariana with a subpoena for the deposition, she did not appear. At a final trial management conference held a few days after the scheduled deposition date, the prosecutor told the superior court that Ariana had failed to appear and stated: "At this point, I'm not asking for anything. That same person was served for trial. If they do not appear at master calendar I will ask for a warrant at that time."

¶32 Midtrial, Zamora moved to preclude Ariana's testimony. The prosecutor responded by denying any disclosure violation—again characterizing Ariana as "uncooperative" and pointing to her refusal to "communicate with the State"—explaining communication had been limited to Ariana "acknowledging" a text message stating she was required to appear in court subject to a criminal subpoena. The prosecutor also noted he had "timely produced" all of Ariana's "written or recorded statements . . . in the State's possession." The superior court denied the motion, finding preclusion an inappropriate remedy absent a discovery violation by the State. The court assured defense counsel, however, that he would have "the opportunity to interview" Ariana before she testified.

¶33 On the eighth day of trial, Ariana appeared in court, accompanied by counsel. Her attorney informed the superior court that she would submit to an interview with the prosecutor and defense counsel before testifying. After meeting with Ariana during a two-hour recess, Zamora's attorney again moved to preclude her testimony. While acknowledging the State did not have "access to her" and had not acted in "bad faith," defense counsel asserted that Ariana had disclosed "surprise information" during the recess interview, compelling the preclusion of her

testimony. The State objected to the motion, arguing the court could not impose such "a sanction" absent a discovery violation and noting that both sides had received the information "at the same time." Apart from recounting his considerable, unsuccessful efforts to secure Ariana's deposition, the prosecutor contended that Zamora suffered no prejudice from the delayed disclosure: "The truth is I don't quite understand the prejudice . . . How did this change anything? He still can get up there and accuse her of lying. . . The defense was going to be this no matter what."

**¶34** After hearing from counsel, the superior court denied the motion to preclude Ariana's testimony, concluding no disclosure violation warranted such a sanction. Defense counsel then waived any objection to Ariana's testimony based on Arizona Rule of Evidence 404(b)–(c), explaining he wanted to explore inconsistencies in her account that possibly could be revealed by eliciting her testimony concerning alleged, uncharged offenses.

**¶35** When she took the stand, Ariana described her relationship with Simone, stating they are "close," "like sisters." She recounted that in 2018, she and Simone, together, disclosed to their mothers that Zamora had sexually abused them. Following their joint disclosure, Simone "went to the police" while Ariana opted to handle the situation independent of any law enforcement investigation. Over time, however, Ariana "felt guilty" for not supporting Simone and decided to cooperate with the prosecution because she "had to do what's right." In response to questioning, Ariana recalled various acts of sexual abuse, both those she witnessed Zamora commit against Simone and those he committed against her, including situations in which she interceded to "protect" Simone and then became the focus of the abuse. Ariana testified that Zamora initially convinced her and Simone not to report the abuse by threatening any disclosure would hurt and anger other family members.

**¶36** "Deciding whether a disclosure violation has occurred and the propriety of sanctions are within the sound discretion of the [superior] court." *State v. Trujillo*, 227 Ariz. 314, 320, ¶ 25 (App. 2011). On review, we grant "considerable deference" to the court's "perspective and judgment." *Id.* (citation modified). In so doing, "we will find an abuse of discretion only when no reasonable judge would have reached the same result under the circumstances." *State v. Naranjo*, 234 Ariz. 233, 242, ¶ 29 (2014) (citation modified).

**¶37** To assess whether preclusion of a witness is warranted under Rule 15.7, the superior court must consider: (1) how vital the witness's

testimony is to the case, (2) whether the witness's testimony will surprise the opposing party, (3) whether the untimely disclosure is attributable to a discovery violation made in bad faith, and (4) any other relevant circumstances. *Id.* at ¶ 30. "Any sanction must be proportional to the violation and must have a minimal effect on the evidence and merits." *State v. Payne*, 233 Ariz. 484, 518, ¶ 155 (2013) (citation modified). Accordingly, "a witness should be precluded only as a last resort." *State v. Delgado*, 174 Ariz. 252, 257 (App. 1993) (citation modified).

¶38 With these principles in mind, we examine the relevant criteria. First, Ariana's testimony, though perhaps not vital, was material to the prosecution. She corroborated the victims' accounts of abuse, offering eyewitness testimony of some of the charged offenses (though defense counsel, on cross-examination, highlighted various discrepancies in her recollections compared to Simone's testimony), and additional, independent evidence that Zamora engaged in a pattern of abusing his young relatives over an extended period. Second, while defense counsel described Ariana's interview as including "surprise" disclosures, he did not specify which statements or details were revelatory. Regardless, the prosecutor did not challenge defense counsel's description but noted that both sides received the previously undisclosed information at the same time. Third, and determinative here, the prosecutor did not thwart Ariana's deposition or otherwise act in bad faith to prevent the defense from interviewing her. In fact, rather than engaging in willful noncompliance, the record reflects that the prosecutor diligently sought Ariana's deposition, timely informed both the defense and the superior court that Ariana would neither cooperate with nor communicate with the State, requested and obtained a court order to depose her, and served her with two subpoenas. And, as soon as Ariana made herself available to the State, defense counsel had the opportunity to question her. To be clear, the prosecutor complied with his disclosure obligations. Despite his diligent efforts, Ariana simply refused to sit for a pretrial interview. On this record, no discovery violation warranted a sanction under Rule 15.7.

¶39 Given the absence of a discovery violation, the superior court did not abuse its discretion in permitting Ariana to testify. The State made real efforts to produce her for an interview, and defense counsel was able to cross-examine her on discrepancies with Simone's account. While Zamora correctly notes that Rule 15.3 "is intended to effectuate the constitutional right of cross-examination contained in the confrontation clause of the Sixth Amendment of the United States Constitution," *Murphy v. Superior Court*, 142 Ariz. 273, 278 (1984), he never requested a recess or continuance so he could further interview Ariana, reassess his trial strategy,

or develop his line of questioning on cross-examination. On this record, the superior court was not required to order a continuance on its own initiative; instead, it acted within its discretion by addressing Ariana's earlier refusal to sit for a pretrial interview through a requirement that she meet with counsel before testifying. *See State v. Krone*, 182 Ariz. 319, 322 (1995) (explaining some discovery violations "can be easily solved, say, by allowing a witness to be interviewed during trial"); *State v. Tyler*, 149 Ariz. 312, 315 (App. 1986) (concluding superior court did not abuse its discretion by determining "discovery sanctions were not appropriate," despite the State's disclosure of a witness two days before trial, because the defense had "sufficient time . . . to interview the witness and properly prepare for trial").

### III. Denial of Motion for New Trial

**¶40** Zamora challenges the superior court's denial of his motion for new trial without holding an evidentiary hearing. He contends he put forward "sufficient allegations to warrant additional investigation and fact finding."

**¶41** We review a superior court's denials of a motion for a new trial and a requested evidentiary hearing for an abuse of discretion. *See State v. Miller*, 178 Ariz. 555, 556–57 (1994).

**¶42** After the jury returned its verdicts, Zamora moved for a new trial and requested an evidentiary hearing. Among other things, and as relevant to this appeal, Zamora asserted that an unnamed juror committed perjury "by indicating . . . he did not know any . . . of the State's listed witnesses." As detailed in the motion, defense counsel stated he "was made aware" that this juror knew the victims' father and "had a previous business relationship with him." Because he did "not have a juror list and the associated seat assignment," defense counsel explained he could not "identify the juror by name." Counsel further alleged that the victims' father had "enlisted his associate . . . [to] communicate with [unnamed] members of the jury." Although Zamora attached two exhibits to his motion, neither pertained to the alleged juror perjury or jury tampering. Notably, defense counsel also stated he expected to identify the perjurer "by the time of the reply," but failed to file a reply brief.

**¶43** In response, the State asked the superior court to deny the motion for new trial without holding an evidentiary hearing, contending the motion lacked any factual basis and relied "solely upon hearsay and rumors." Pointing to defense counsel's inability to identify either the

purported perjurer or the "source of this information," the State contended that the bare allegations, devoid of any evidence, were insufficient to trigger any duty to investigate the matter further.

¶44        Initially, the superior court scheduled oral argument on the motion. It later determined that oral argument was unnecessary, however, and denied the motion. Specific to the perjury allegation, the court found Zamora had failed to present any "concrete information or evidence" to support the claim.

¶45        "A criminal defendant is entitled to be tried by an impartial jury" and a "jury's verdict must be based upon the evidence developed at the trial." *Miller*, 178 Ariz. at 557 (citation modified). Pursuant to Rule 24.1(c)(3)(C), (F), the superior court may grant a new trial if a juror: (1) committed misconduct by committing perjury "or willfully failing to respond fully to a direct question posed during the voir dire examination," or (2) conversed "before the verdict with any interested party about the outcome of the case." While a court has a "duty" to resolve a "factual conflict regarding the basis for a new trial," *State v. Rocco*, 119 Ariz. 27, 29 (App. 1978), "if there is no significant factual question," the court may "deny a motion for new trial without holding an evidentiary hearing," *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 239 Ariz. 151, 154, ¶ 12 (2016) (citation modified).

¶46        Here, Zamora failed to present any evidence creating a factual dispute for the superior court to resolve. Instead of providing a juror affidavit or other sworn statement, he offered only vague and unsubstantiated hearsay allegations. *See State v. Spears*, 184 Ariz. 277, 288 (1996) (concluding the superior court did not abuse its discretion in denying defendant a new trial without first holding an evidentiary hearing because the juror affidavit submitted in support of the motion contained only vague allegations). Therefore, on this record, the superior court did not abuse its discretion by denying Zamora's motion for a new trial without conducting an evidentiary hearing.

## CONCLUSION

¶47        We affirm.

